CITY OF ROBSTOWN, Noe Garza, Julian Olivera, J.B. Talley, and Jorge Luis Aguilar, Appellants,

v.

Primitivo RAMIREZ, Individually and Michelle Ramirez, by and through her next friend, Primitivo Ramirez, Appellees.

No. 13–99–738–CV.

Court of Appeals of Texas, Corpus Christi.

March 31, 2000.

Rehearing Overruled May 11, 2000.

Robert J. Sigler, Clay E. Coalson, Meredith, Donnell & Abernethy, Corpus Christi, Karen D. Matlock, Asst. Atty. Gen., Austin, for appellants.

Gail D. C. Dorn, William H. Berry, Jr., Corpus Christi, for appellees.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ

## O P I N I O N

NELDA V. RODRIGUEZ, Justice.

This is an accelerated appeal from the denial of a summary judgment based on the affirmative defense of immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.1999). We affirm.

Appellees Primitivo Ramirez, individually and on behalf of minor Michelle Ramirez, and Librada Ramirez filed suit against Appellants the City of Robstown (City), several of its officers, and Jorge Luis Aguilar of the Texas Department of Public Safety [1] for various torts, violations of rights under the United States and Texas Constitutions, and claims under the Texas Tort Claims Act arising from the execution of a search warrant. Appellants filed motions for summary judgment on the grounds of, *inter alia,* official and sovereign immunity. The trial court denied the motions. By two issues, the City and its officers complain the trial court erred in denying their motion for summary judgment based on the grounds of official and sovereign immunity. By three issues, Aguilar contends the trial court erred in denying his motions for summary judgment because he was entitled to qualified and official immunity and because no cause of action exists under the Texas Constitution for a constitutional tort.

The summary judgment evidence reveals Officer J.B. Talley of the Robstown Police Department obtained information from a confidential informant that appellees' son, Arturo Ramirez, was in possession of cocaine and heroin at appellees' residence. Talley contacted Officer Jorge Luis Aguilar of the Texas Department of Public Safety for assistance in the investigation, and Aguilar escorted the informant to the location where the informant had seen Arturo in possession of the contraband. The informant identified a structure at the rear of 1010 Ohio Street.

A search and arrest warrant was subsequently issued to search 1010 Ohio Street, rear, Robstown, Nueces County for cocaine and heroin. Appellees' actual address, however, was 1013–B Indiana Street. Several Robstown police officers and Aguilar executed the warrant by en-

---

1. Appellees also named the Department of Public Safety for the State of Texas and the State of Texas as defendants in the petition. However, the only parties appealing the denial of the summary judgment are the officers and the City of Robstown. According to Aguilar's brief, neither the State of Texas nor the Texas Department of Public Safety were served, and are therefore not parties to the proceeding.

tering the back door of appellees's residence, which faced Ohio Street, with their guns drawn. In executing the warrant, the officers pushed aside Librada Ramirez, an elderly woman, while she was standing on the porch, and forced their way into the house. An officer found Primitivo Ramirez, who was married to Librada and was also elderly, in his bedroom and pointed a gun at him, grabbed his arms, and handcuffed him. Primitivo was on his bed, and when he attempted to get up, the officer held him down on the bed. Primitivo was then taken to the kitchen, and the handcuffs were removed. According to Primitivo, the handcuffs were on him for eight to ten minutes.

Two officers also entered the bedroom of Michelle Ramirez, who was fourteen years old. One of the officers pointed his gun at her, and told her not to move. The officer holstered his gun after Michelle sat on her bed. The officer then told her to close the curtains because people were looking inside, and she did so. One or both of the officers searched Michelle's room for approximately ten minutes. The officers never touched her. In total, the officers searched appellees' home for approximately twenty to thirty minutes and left the home in a disheveled state. Arturo was not at the premises and no cocaine or heroin was found. Appellees claim they suffered fright, nervousness, and humiliation as a result of the search.

Appellees originally filed suit in the United States District Court for the Southern District of Texas, which granted partial summary judgment in favor of appellants as to all federal claims and some state claims. The court dismissed appellees' remaining state claims without prejudice. The United States Court of Appeals for the Fifth Circuit affirmed the summary judgment. Appellants bring this interlocutory appeal from the denial of motions for summary judgment from the 214th Judicial District Court of Nueces County, Texas.

**■** The City and its officers, in their first issue, and Aguilar, in his second issue, contend the trial court erred in denying their motions for summary judgment because the officers were entitled to official immunity. To prevail in a motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See City of El Campo v. Rubio*, 980 S.W.2d 943, 948 (Tex.App.—Corpus Christi 1998, review dismissed w.o.j.). This burden may be satisfied by conclusively establishing all elements of an affirmative defense. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *City of Pharr v. Ruiz*, 944 S.W.2d 709, 712, (Tex.App.—Corpus Christi 1997, no writ). Official immunity is an affirmative defense. *See Rubio*, 980 S.W.2d at 948. Consequently, the burden was on appellants to establish the elements of their affirmative defense. *See id.* (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984)). In determining whether there is a genuine issue of material fact precluding summary judgment, we indulge every reasonable inference in favor of the non-movant and view evidence favorable to the non-movant as true. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

**■** Employees of the government are entitled to official immunity from suit for the performance of discretionary duties, that are within the scope of their authority, and performed in good faith. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Ruiz*, 944 S.W.2d at 712. We conclude, and the parties do not contest, that the officers performed discretionary duties in obtaining and executing the warrant. *See City of Coppell v. Waltman*, 997 S.W.2d 633, 637 (Tex.App.—Dallas 1998, pet. denied) (officer's search of arrestee is discretionary act); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1995, no writ) (police officers exercise discretion in conducting investi-

gation before seeking warrant); *Closs v. Goose Creek School Dist.*, 874 S.W.2d 859, 876 (Tex.App.—Texarakana 1994, no writ) (investigation of criminal activity and execution of search warrant are generally discretionary acts calling for personal deliberation and judgment).

 Officials act within the scope of their authority when they discharge duties generally assigned them. *See Chambers*, 883 S.W.2d at 658; *City of Hidalgo v. Prado*, 996 S.W.2d 364, 368 (Tex.App.—Corpus Christi 1999, no pet.). Even if the action is wrongful or negligent, the official still acts within the scope of his authority. *See Prado*, 996 S.W.2d at 368. We conclude that the peace officers acted within the scope of their authority by obtaining and executing a search and arrest warrant. Thus, the remaining issue is whether the officers acted in good faith.

 In evaluating good faith, we apply an objective legal reasonableness test, disregarding the officer's subjective state of mind. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex.1997); *City of Lancaster*, 883 S.W.2d at 656. An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to take action outweighed a clear risk of harm to the public in taking the action. *See Wadewitz*, 951 S.W.2d at 466–67; *City of Lancaster*, 883 S.W.2d at 656–57.

 When the summary judgment movant satisfies the legal reasonableness test, the non-movant must controvert that proof by showing that "no reasonable person in the [officer's] position could have thought the facts were such that they justified [the officer's] acts." *City of Lancaster*, 883 S.W.2d at 657; *see Geick v. Zigler*, 978 S.W.2d 261, 265 (Tex.App.—Houston [14th Dist.] 1998, no writ). Thus, there is "an elevated standard of proof for the non-movant seeking to defeat a claim of official immunity in response to a motion for summary judgment." *City of Lancaster*, 883 S.W.2d at 656.

According to appellees, the officers acted unreasonably in obtaining and executing the warrant. Specifically, appellees maintain Talley failed to investigate the accuracy of the information provided by the informant and failed to verify the informant's credibility. Additionally, appellees assert the search was unreasonable because the warrant contained an address that was different from their address. Finally, appellees contend the officers used excessive force in execution of the warrant.

 Appellants urge that appellees are precluded from asserting the warrant was invalid, under the doctrines of collateral estoppel and *res judicata*, because a federal district court and appellate court previously found the warrant valid. As appellants note, the United States Court of Appeals for the Fifth Circuit affirmed the district court's granting of summary judgment, and found the warrant was properly issued. *See Ramirez v. City of Robstown, et al.*, No. 95–40037, slip op., 68 F.3d 467 (5th Cir.1995) (unpublished). The court also found that, although the warrant misstated appellees' address, it described their residence with sufficient particularity. Finally, the court concluded that no jury could have determined the officers exercised anything more than a *de minimus* use of force.

 We lack jurisdiction to consider the defenses of *res judicata* or collateral estoppel independent of appellants' assertions of immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.1999); *Cameron County v. Carrillo*, 7 S.W.3d 706, 709 (Tex.App.—Corpus Christi 1999, no pet.) (interlocutory appeal is only available for assertion of immunity, and not other issues advanced in motion for summary judgment); *City of Alamo v. Holton*, 934 S.W.2d 833, 836 (Tex.App.—Corpus Christi 1996, no writ) (review of interlocutory appeal under section 51.014(a)(5) is limited to merits of immunity defense); *Boozier v. Hambrick*, 846 S.W.2d 593, 596 (Tex.App.—Houston [1st.

Dist.] 1993, no writ) ("assertion of immunity is the only ground for summary judgment whose denial we can review under" section 51.014(a)(5)). Although appellants clearly tie their assertions of *res judicata* and collateral estoppel into their arguments for immunity on appeal, they failed to do so in their motions for summary judgment. In their motion for summary judgment, unlike their brief to this Court, the City and its officers raised the issues of *res judicata* and collateral estoppel in separate paragraphs from their assertion of official immunity. Nowhere within their discussion of official immunity, did they assert that the trial court should apply the doctrines of collateral estoppel or *res judicata* to resolve the issues of the validity of the warrant or the reasonableness of the officers' use of force. Similarly, Aguilar did not discuss *res judicata* or collateral estoppel in the context of official immunity in his motions for summary judgment. Issues not raised to trial court by written motion, answer or other response may not considered on appeal as grounds for reversal. *See* Tex.R. Civ. P. 166a(c); *Abbott Lab., Inc. v. Segura*, 907 S.W.2d 503, 507 (Tex.1995). As the trial court did not have an opportunity to consider appellants' *res judicata* and collateral estoppel arguments as part of their official immunity defense, we may not consider such an argument on appeal. *See* Tex.R. Civ. P. 166a(c); *Kassen v. Hatley*, 887 S.W.2d 4, 13 (Tex., 1994); *Benson v. City of San Antonio*, 715 S.W.2d 143, 144–45 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (parties are not permitted to make arguments on appeal that were not made in summary judgment because it would preclude trial judge from reviewing issues and allow parties to lay behind the log). Consequently, we must conduct an independent review of whether the officers exercised good faith.

Appellants concede the warrant named the wrong address, but assert the warrant adequately described the premises otherwise, and maintain that the correct residence was actually searched. The underlying affidavit in this case described the premises as:

> A building used as a dwelling in the 1000 block of Ohio Street, Robstown, Nueces County, Texas. The dwelling is on the southside of Ohio Street facing North. The dwelling is white in color. The dwelling is on the same lot with a dwelling that is beige in color with brown trim and this dwelling has the numbers 1010 on the front of the dwelling. The suspect dwelling is southwest of 1010 Ohio Street, Robstown, Texas. The address to 1010 Ohio Street, rear, Robstown, Nueces County, Texas to include the dwellings surrounding curtilage and vehicle(s) on property.

In support of their motion for summary judgment, appellants provided the affidavit of Aguilar, who stated appellees' residence had its front door on Indiana Street, and back door on Ohio Street. The back portion of appellees' residence was where the informant told Aguilar he had seen Arturo in possession of the contraband. Aguilar further affied that the residence described in the affidavit was the residence searched.

Talley stated, by affidavit, that after the search was completed, he verified that the physical description on the warrant was correct and stated that the informant had directed the officers to Arturo's parents' home. Talley affied that the description of the home, as set forth in the warrant, was the residence pointed out to Aguilar as the location where the informant had seen Arturo in possession of contraband.

Appellants note that Michelle testified that appellees' house was white and her neighbor's house had brown trim, consistent with the description in the affidavit.

Appellants provided summary judgment evidence of the reliability and veracity of the informant through the affidavit of Talley. Talley stated that based on the informant's knowledge of street narcotics and his prior credibility, he was able to determine the informant was reliable. Talley

also relied on his personal knowledge in obtaining the warrant, as he had previously arrested Arturo. Appellants also note that Arturo is presently serving a twenty year sentence for burglary of a habitation with intent to commit theft and possession of heroin; thus, Arturo was ultimately found in possession of heroin, as alleged in the warrant.

Regarding execution of the warrant, appellants note that Librada stated in a deposition that the officers did not harm her or treat her roughly. Concerning the allegation that Librada was pushed when the officers entered the house, Raul Galvan, appellees' expert, testified by deposition that it is necessary for officers to enter a house as quickly as possible in conducting a search and arrest warrant. Primitivo testified that none of the officers were rough on him while they were in his home. However, Primitivo also testified that the placing of handcuffs on him hurt his hands, arms, and wrist. Talley stated in his affidavit that many of the officers were uniformed during the search.

Finally, appellants provided the affidavit of expert Tommy Arp, an officer of the Texas Department of Public Safety, who stated that a reasonable and prudent officer, under the same or similar circumstances could have believed that the proper address was named in the warrant and that the force used by the officers was necessary. Arp stated that the officers acted upon a valid warrant and that the search was executed in a reasonable and legal manner. As Arp noted, drug dealers are often violent and frequently armed; consequently, the officers use of force under the circumstances was justified.

■ Appellants' summary judgment evidence clearly established that a reasonably prudent officer in their position could have believed the facts were such that they justified their actions in obtaining and executing the search warrant. Accordingly, the burden of proof shifted to appellees to show that no reasonable person in their positions could have thought the facts were

such that they justified their acts. *See City of Lancaster*, 883 S.W.2d at 657.

■ In attempting to controvert appellants' summary judgment evidence, appellees noted that one of the officers admitted knowing appellees; thus, according to appellees, he knew or should have known Arturo was not residing at their home. Primitivo testified by deposition that Arturo had not lived at the premises for four to five years. It had been three to four months since Primitivo had seen him. Michelle testified by deposition that Arturo did not receive mail at appellees' home.

Appellees provided summary judgment evidence that one of the officers had previously used excessive force and was not recommended for rehire, and that another was suspended because of accusations of shoplifting.

Appellees relied on the affidavits and depositions of several experts. D.P. Van Blaricom, former Chief of Police for the City of Bellevue, Washington for approximately ten years, stated in his affidavit that the search warrant was facially invalid because it listed the wrong address and failed to describe the place to be searched with particularity. He noted that the affidavit supporting the warrant incorrectly stated that Arturo was in charge of and controlled the described premises. Moreover, there was no evidence that the informant was reliable. For the above reasons, he concluded that the search of appellees' home was unlawful.

Van Blaricom opined that Aguilar played a key role in the unlawful search because he accompanied the informant to the premises, gave the incorrect description of the premises, and participated in the search. He affied that the force used against appellees was excessive and objectively unreasonable based on the fact that two of the appellees were elderly and in poor health, the other appellee was a young girl, two of the appellees were in bed, and the officers had no reason to believe that appellees presented any threat

to them. According to Van Blaricom, the officers should have given verbal commands, rather than using force to carry out the search.

Raul Galvan, a licensed private investigator who was formerly employed by the Corpus Christi Police Department, concluded the affidavit used to get the warrant was facially defective because it did not reasonably describe the place to be searched. Galvan examined the affidavit supporting the warrant and visited the premises in question and concluded, in his deposition, that the location described in the affidavit was not appellees' house. This was because the affidavit described the house as to the rear of 1010 Ohio, but appellees' residence was side by side and not to the rear. According to Galvan, the only house with a rear building was the one next door to appellees' residence and was white like the one described in the affidavit.

In Galvan's opinion, a reasonable and prudent officer would have investigated the entire property and area before obtaining a warrant. Furthermore, a reasonable officer would not have believed the affidavit used to obtain the warrant was valid, or that the information provided by the informant was reliable. Finally, he opined the officers used excessive and unreasonable force, and that the officers did not need to point their weapons at a child or elderly person, particularly when the informant did not indicate there were any weapons at the residence.

C. Gerard Miller, a licensed attorney in the State of Texas, affied that the warrant was defective on its face and was unsupported by probable cause based on the fact that the address was incorrect and because the credibility of the informant had not been established prior to issuance of the warrant. Miller noted that the affidavit described the house to be searched as 1010 Ohio Street, rear, but appellee's residence was not to the rear of 1010 Ohio Street. According to Miller, the officers should have conducted further surveillance to avoid describing the incorrect address on the affidavit. For example, the officers could have checked with public utilities to see who was paying the bills and to determine who was in charge of the premises. The officers also could have surveyed the premises and talked to neighbors before executing the warrant. Although Talley had previously arrested Arturo, Miller observed, he had never done so at appellees' residence. According to Miller, a reasonably prudent police officer would not have submitted the affidavit to obtain the warrant, and would have known there was not probable cause to obtain the warrant. Significantly, Miller stated that no reasonable officer could have had a good faith belief that he was executing a proper affidavit. Finally, Miller affied that the officers used excessive force.

Because appellees' controverting evidence is sufficient to raise a fact question on the issue of good faith, the trial court did not err in denying appellants' motions for summary judgment on the ground of official immunity. Aguilar's second issue and the City and its officers' first issue are overruled.

■■■ By its second issue, the City asserts it was entitled to summary judgment on the grounds of sovereign immunity based on the official immunity of the officers.[2] The Texas Tort Claims Act subjects a governmental entity to liability for the torts of its employees if "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. &

2. Our review of the City's claim of sovereign immunity is limited to its derivative claim of immunity based on the officer's claim of official immunity. We lack jurisdiction to consider the City's assertion of sovereign immunity against appellees' claims arising out of the City's performance of a governmental function, including appellees' allegations of negligent hiring, failure to train, and inadequate policies. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.1999); *Cameron County v. Alvarado*, 900 S.W.2d 874, 879 (Tex.App.—Corpus Christi 1995, writ dism'd w.o.j.).

REM.CODE ANN. § 101.021(1) (Vernon 1997). Conversely, when a governmental employee is protected from suit under the doctrine of official immunity, the governmental entity's sovereign immunity remains intact. *See City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993). A governmental entity is only entitled to appeal from an interlocutory order pursuant to section 51.014(a)(5) of the Texas Civil Practice and Remedies Code when its claim of sovereign immunity is "based on" an individual's assertion of qualified or official immunity in order for the sovereign. *See Id.* Because the official immunity of the individual officers was not established, the City was not derivatively entitled to sovereign immunity. Appellant City's second issue is overruled.

 In his first issue, Aguilar contends the trial court erred in failing to grant summary judgment as to appellees' federal claims because the federal district court and appellate court previously found that appellees' constitutional rights were not violated. Essentially, Aguilar's argument relies on the doctrines of *res judicata* and collateral estoppel. We lack jurisdiction to consider any ground except that of immunity in an interlocutory appeal under section 51.014(a)(5) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5); *Holton,* 934 S.W.2d at 836; *Boozier,* 846 S.W.2d at 596. To the extent that Aguilar's argument on appeal is based on qualified immunity, we are unable to consider it as he did not raise the issues of *res judicata* or collateral estoppel within an argument of qualified immunity in his motions for summary judgment. *See* TEX.R. CIV. P. 166a(c); *Segura,* 907 S.W.2d at 507. Aguilar's first issue is overruled.

**3.** *See e.g., City of Beaumont v. Bouillion,* 896 S.W.2d 143, 147 (Tex.1995) (noting that Texas has no comparable provision to 42 U.S.C. § 1983 and holding "there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution"); *Tutt v. City of Abilene,* 877 S.W.2d 86, 87–89 (Tex.App.—

 By his third issue, Aguilar complains the trial court erred in failing to grant summary judgment as to appellees' claims under the Texas Constitution. As Aguilar observes, several courts have recognized that there is no private cause of action for a violation of the Texas Constitution.[3] However, we lack jurisdiction to consider grounds for summary judgment outside of immunity in an interlocutory appeal under section 51.014(a)(5). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5); *Holton,* 934 S.W.2d at 836. Appellant Aguilar's third issue is overruled.

We AFFIRM the trial court's denial of the motions for summary judgment.

Eastland 1994, writ denied) (finding no "self-operative creation of a constitutional tort liability"); *Bagg v. University of Tex. Medical Branch at Galveston,* 726 S.W.2d 582, 584 n. 1 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e) (explaining "there is no state 'constitutional tort' ").