Warren & Lillian Cozby v. The City of Waco















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-095-CV

     WARREN R. COZBY
     AND LILLIAN A. COZBY,
                                                                         Appellants
     v.

     THE CITY OF WACO,
                                                                         Appellee
 

From the 19th District Court
McLennan County, Texas
Trial Court # 2001-2285-1
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Warren and Lillian Cozby filed suit against the City of Waco (the “City”) and O’Reilly
Automotive, Inc. to resolve a dispute among the parties regarding an alley which runs between
a tract of land owned by the Cozbys and a tract owned by O’Reilly. The City filed a plea to the
jurisdiction premised on sovereign immunity. The City filed a summary judgment motion three
weeks later. The trial court conducted a hearing on these pleadings and signed an order granting
the City’s plea to the jurisdiction and “in the alternative” the summary judgment motion. The
Cozbys bring this interlocutory appeal.


 See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8)
(Vernon Supp. 2003).
BACKGROUND
      O’Reilly built an auto parts store on a tract of land next to the Cozbys’ residence. A City-owned alley runs between their lots. At a hearing on O’Reilly’s request for a building permit,
Warren Cozby objected that he would need to build a fence to shield his property from the activity
at the store. An O’Reilly representative assured him that O’Reilly would build a fence. O’Reilly
poured a concrete parking lot which covers that portion of the alley running between the lots. 
O’Reilly built a fence in the alley, one foot away from the Cozbys’ lot line. After the Cozbys
objected to the location of the fence, O’Reilly removed it.
      The Cozbys filed suit against the City and O’Reilly. Their petition alleges in pertinent part:
      •    the pavement of the alley created a 9-inch difference in elevation between the alley and
their lot which has “prevented the use of their garage and the property on the side of their
house which had over the years been used as a parking area”;
 
      •    the City and/or O’Reilly poured “soil” at the edge of the concrete pavement to provide
a transition from the alley to their property, “which washed away and created a mud
hole”;
 
      •    the City and O’Reilly are in violation of a city fencing ordinance;
 
      •    the City “is guilty of selective enforcement” of the ordinance and of discrimination; and
 
      •    the Cozbys “have each suffered anxiety, loss of sleep, nervous problems, and aggravation
of serious medical problems over the loss in value of their home, being subjected to
constant traffic from the business of [O’Reilly], noise, and further being unable to use
their garage and parking to which they are accustomed; all of which caused emotional
distress.”

      The City filed a plea to the jurisdiction in which it contended that the Cozbys’ claims “do not
fall within any waiver of [the City’s sovereign] immunity.” The City specifically contended that
the Cozbys’ allegations do not state a claim under the Texas Tort Claims Act.
      Thereafter, the City filed a traditional motion for summary judgment. The City contended
in the summary judgment motion that it is entitled to judgment as a matter of law on the merits of
the Cozbys’ claims as well as on the basis of sovereign immunity. The City supported its motion
with excerpts from the Cozbys’ depositions and a copy of City ordinance 28-219 which requires
“screening” by fence or vegetation along any commercial lot line which abuts a residential
“district.”
      The trial court heard the plea to the jurisdiction and the summary judgment motion in a single
proceeding. After hearing argument of counsel, the court took the matter under advisement. 
Eighteen days later, the court signed an order granting the City’s plea to the jurisdiction and “in
the alternative” the summary judgment motion. The court rendered judgment that the Cozbys take
nothing from the City.
SCOPE OF APPEAL
      The Cozbys present three points of error: one challenging the court’s ruling on the plea to the
jurisdiction and two challenging the summary judgment ruling.
      Section 51.014(a)(8) of the Civil Practice and Remedies Code gives this Court jurisdiction to
consider an interlocutory appeal from an order granting or denying a plea to the jurisdiction filed
by a governmental unit. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). However, we do
not have jurisdiction to consider an appeal from an interlocutory order which grants or denies a
summary judgment motion filed by a governmental unit, unless the governmental unit sought a
summary judgment “based on” its employee’s qualified or official immunity. City of Houston v.
Kilburn, 849 S.W.2d 810, 812 (Tex. 1993); City of Robstown v. Ramirez, 17 S.W.3d 268, 276
(Tex. App.—Corpus Christi 2000, pet. dism’d w.o.j.); see also Tex. Civ. Prac. & Rem. Code
Ann. § 51.014(a)(5) (Vernon Supp. 2003).
      The City did not seek a summary judgment on the basis of its employee’s qualified or official
immunity. Thus, we do not have jurisdiction to review that portion of the trial court’s order
granting the summary judgment. Id. For this reason, we dismissed that portion of the Cozbys’
appeal which challenges the summary judgment ruling in an unpublished order we issued on April
24. Cozby v. City of Waco, No. 10-02-095-CV, slip op. at 3 (Tex. App.—Waco Apr. 24, 2002,
order) (not designated for publication) (citing Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.,
2 S.W.3d 393, 395 (Tex. App.—San Antonio 1999, no pet.); Bobbitt v. Cantu, 992 S.W.2d 709,
712 (Tex. App.—Austin 1999, no pet.); Metzger v. Sebek, 892 S.W.2d 20, 55 (Tex.
App.—Houston [1st Dist.] 1994, writ denied); Grace v. McCrary, 390 S.W.2d 397, 398 (Tex.
Civ. App.—Waco 1965, writ dism’d)). Accordingly, we dismiss the Cozbys’ second and third
points for want of jurisdiction.
STANDARD OF REVIEW
      Even though we do not have jurisdiction to review the summary judgment ruling, when as in
this case the trial court has considered a plea to the jurisdiction together with a summary judgment
motion which addresses jurisdictional issues, “we consider the facts alleged by the plaintiff [in the
pleadings], and to the extent that it is relevant to the jurisdictional issue, the evidence submitted
by the parties.” Tex. Dep’t of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex. 2001)
(quoting Tex. Natural Resource Conservation Comm’n v. White, 46 S.W.3d 864, 868 (Tex.
2001)); accord County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002) (“In deciding a
plea to the jurisdiction, a court may not weigh the claims’ merits but must consider only the
plaintiffs’ pleadings and the evidence pertinent to the jurisdictional inquiry.”).
      Plaintiffs must allege facts which affirmatively demonstrate that the trial court has jurisdiction. 
Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Godley Indep. Sch.
Dist. v. Woods, 21 S.W.3d 656, 658 (Tex. App.—Waco 2000, pet. denied). We construe the
allegations in the plaintiffs’ favor. Brown, 80 S.W.3d at 555; Woods, 21 S.W.3d at 658. Because
the City does not claim that the Cozbys’ allegations are fraudulent, we must take them as true. 
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000); Woods, 21 S.W.3d at 658.
      If the plaintiffs fail to plead facts which establish jurisdiction, but their petition does not
affirmatively demonstrate incurable defects in jurisdiction, the plaintiffs should be given an
opportunity to amend. Brown, 80 S.W.3d at 555; Woods, 21 S.W.3d at 658. Conversely, if the
facts alleged in the petition affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing an opportunity to amend. Id.
APPLICATION
      The Cozbys claim in their first point that their petition alleges three distinct causes of action
for which sovereign immunity has been waived: a claim under the Tort Claims Act; a takings
claim; and a nuisance claim. Their petition avers the following facts


 for which they seek to hold
the City liable:
      •    the difference in elevation between the paved portion of the City-owned alley and their
own property has prevented them from using a garage at the rear of their property or
parking in their yard adjacent to the alley;
 
      •    the City’s efforts to ameliorate the drop-off by placing soil at the edge of the paved alley
left a mudhole on their property;
 
      •    the fence built in the alley, one foot from their property line restricted their access to
their yard; and
 
      •    the City’s failure to require O’Reilly to construct a fence along its own property line
adjacent to the alley has caused a diminution in the value of their property and has caused
them to suffer mental anguish.

Tort Claims Act
      By the enactment of the Tort Claims Act (the “Act”), the Legislature waived governmental
immunity from suit in cases in which liability exists under the terms of the Act. Tex. Civ. Prac.
& Rem. Code Ann. § 101.025(a) (Vernon 1997); Thompson v. City of Corsicana Hous. Auth.,
57 S.W.3d 547, 551 (Tex. App.—Waco 2001, no pet.); Tex. Dep’t of Mental Heath & Mental
Retardation v. Pearce, 16 S.W.3d 456, 459 (Tex. App.—Waco 2000, pet. dism’d w.o.j.). With
respect to municipalities, the Act waives sovereign immunity “for damages arising from [a
municipality’s] governmental functions” including “street construction and design” and “street
maintenance.” Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(3), (4) (Vernon Supp. 2003). 
In general terms, the Act waives immunity from liability for personal injury “caused by a
condition . . . of . . . real property if the governmental unit would, were it a private person, be
liable to the claimant.” Id. § 101.021(2) (Vernon 1997). For a premise defect, “the governmental
unit owes to the claimant only the duty that a private person owes to a licensee on private
property, unless the claimant pays for the use of the premises.” Id. § 101.022(a) (Vernon 1997).
      Plaintiffs who are licensees must establish the following in a premise defect case:
 
      •    a condition of the premises posed an unreasonable risk of harm to them;
 
      •    the owner had actual knowledge of the defective condition;
 
      •    the licensee had no knowledge of the defective condition;
 
      •    the owner failed to exercise ordinary care to protect the licensee from danger; and
 
      •    such failure was a proximate cause of injury to the licensee. 

Thompson, 57 S.W.3d at 552-53 (citing City of Grapevine v. Roberts, 946 S.W.2d 841, 843 (Tex.
1997); State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992);
State v. Tennison, 509 S.W.2d 560, 561 (Tex. 1974); Tex. Parks & Wildlife Dep’t v. Davis, 988
S.W.2d 370, 374 (Tex. App.—Austin 1999, no pet.)).
      Two of the Cozbys’ four factual allegations arguably qualify as premise defects: (1) the
difference in elevation between the paved alley and their property; and (2) the fence constructed
in the alley one foot from their property line. The City’s efforts to ameliorate the drop-off do not
because this “mudhole condition” existed on the Cozbys’ property, not the City’s. See Brown,
80 S.W.3d at 554 (licensee must show that defendant “owned, occupied, or controlled” premises). 
The City’s failure to require O’Reilly to construct a fence does not because it involves an alleged
premise defect on O’Reilly’s property, not the City’s. Id.
      The Cozbys do not contend that they paid for the use of the alley. Their payment of ad
valorem taxes is not the payment-for-use contemplated by section 101.022(a). Simpson v. Harris
County, 951 S.W.2d 251, 253 (Tex. App.—Houston [14th Dist.] 1997, no pet.); Garcia v. State,
817 S.W.2d 741, 743 (Tex. App.—San Antonio 1991, writ denied). Thus, they are licensees
under the law.
      The Cozbys do not allege that either of the alleged premise defects was “hidden.” They do
not allege that they suffered any physical injury because of the 9-inch drop-off between the alley
and their property or because of any contact with the fence erected near their property line. 
Rather, as Warren Cozby testified in his deposition, “All my problems come from mental stress.” 
As the Cozbys allege in their petition, the complained-of premise defects caused them “worry,
irritation, and trauma.” In sum, they allege that they have suffered mental anguish because of
their awareness of the premises defects.
      Because licensees must establish that they had no knowledge of the alleged defective condition
and because the Cozbys’ allegations and deposition testimony demonstrate that they have been
aware of the complained-of defects at all times pertinent to their suit, the Cozbys cannot prevail
on their premise defect claim. See Roberts, 946 S.W.2d at 843; Payne, 838 S.W.2d at 237;
Thompson, 57 S.W.3d at 553; Davis, 988 S.W.2d at 374.
      The Cozbys’ deposition testimony “affirmatively negates” the City’s liability under the Tort
Claims Act. See Brown, 80 S.W.3d at 555. Accordingly, the Act does not waive the City’s
immunity from suit. See Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a); Thompson, 57
S.W.3d at 551; Pearce, 16 S.W.3d at 459. Therefore, the trial court properly sustained the City’s
plea to the jurisdiction as to the Cozbys’ claim under the Tort Claims Act.
Inverse Condemnation
      Article I, section 17 of the Texas Constitution waives immunity from suit and liability for
governmental taking, damage or destruction of private property “without adequate
compensation.”


 See Tex. Const. art. I, § 17; Gen. Servs. Comm’n v. Little-Tex Insulation Co.,
39 S.W.3d 591, 598 (Tex. 2001). An “inverse condemnation” occurs when a governmental unit
“unreasonably interferes with the landowner’s right to use and enjoy the property, such as by
restricting access” without paying adequate compensation. Westgate, Ltd. v. State, 843 S.W.2d
448, 452 (Tex. 1992); Maguire Oil Co. v. City of Houston, 69 S.W.3d 350, 358 (Tex.
App.—Texarkana 2002, pet. filed).
      To prevail on an inverse condemnation claim, a plaintiff must establish: (1) an intentional
governmental act; (2) done for a public purpose; (3) which takes, damages or destroys the
plaintiff’s property. See Little-Tex Insulation Co., 39 S.W.3d at 598; Maguire Oil Co., 69
S.W.3d at 358; Tarrant Reg’l Water Dist. v. Gragg, 43 S.W.3d 609, 614-15 (Tex. App.—Waco
2001, pet. granted). A taking does not occur absent a “direct restriction” on the use of the
property. See Westgate, 843 S.W.2d at 452-53; Wilkinson v. Dallas/Fort Worth Int’l Airport Bd.,
54 S.W.3d 1, 18 (Tex. App.—Dallas 2001, pet. denied), cert. denied, 534 U.S. 1128, 122 S. Ct.
1065, 151 L. Ed. 2d 968 (2002).
      When the complaint involves a restriction on access, the plaintiff must establish that his
“access rights have been materially and substantially impaired.” State v. Heal, 917 S.W.2d 6, 9
(Tex. 1996); accord State v. Whataburger, Inc., 60 S.W.3d 256, 261 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied); Wilkinson, 54 S.W.3d at 16; R. B. Underwood, Inc. v. State, 23 S.W.3d
468, 470 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). A temporary restriction of access
can be actionable when it constitutes:
a total but temporary restriction of access; or a partial but permanent restriction of
access; or a temporary limited restriction of access brought about by an illegal activity
or one that is negligently performed or unduly delayed.

City of Austin v. Avenue Corp., 704 S.W.2d 11, 13 (Tex. 1986); accord State v. Allen, 870
S.W.2d 1, 1 n.1 (Tex. 1994) (per curiam); Whataburger, 60 S.W.3d at 261; R. B. Underwood,
23 S.W.3d at 470.
      Two of the Cozbys’ factual allegations could be actionable under an inverse condemnation
theory: (1) the limitation of access to their property because of the difference in elevation between
the alley and their property; and (2) the temporary restriction of access to their property by the
fence built along their property line.
      To begin with, it could be argued that the City should not be held liable for either condition
because both were accomplished by O’Reilly. However, both conditions existed on the City’s
property. O’Reilly’s conduct in this regard would be no different than that of a contractor hired
by the City to pave a public street or erect a fence on public property.
      The Cozbys plainly allege that the difference in elevation has prevented them from using their
rear garage or parking on their property adjacent to the alley. If a trier of fact determines that this
is an “unreasonable interference,” then they would be entitled to “adequate compensation.” 
Westgate, 843 S.W.2d at 452; Maguire Oil Co., 69 S.W.3d at 358.
      According to Warren’s deposition testimony, the fence blocked his access to the alley. This
limitation of access would support a finding that the Cozbys’ access was “substantially impaired”
by the fence. See Heal, 917 S.W.2d at 9; Whataburger, 60 S.W.3d at 261; Wilkinson, 54 S.W.3d
at 16; R. B. Underwood, 23 S.W.3d at 470.
      Conversely though, O’Reilly built the fence at the Cozbys’ insistence. Thus, it could be
argued that the fence was built for the benefit of the Cozbys rather than “for a public purpose” as
is required to establish a taking by inverse condemnation. See Little-Tex Insulation Co., 39
S.W.3d at 598; Maguire Oil Co., 69 S.W.3d at 358; Gragg, 43 S.W.3d at 614-15. However, it
could also be argued that O’Reilly built the fence to comply with the city ordinance. Presumably,
the City enacted the screening ordinance for the benefit of those who live in a residential area
which abuts commercial property. The language of the ordinance does not suggest that it was
enacted only for the Cozbys’ benefit.
      If a trier of fact found that O’Reilly constructed the fence to comply with an ordinance enacted
for the public benefit, such finding could support a conclusion that O’Reilly constructed the fence
for a public purpose. We must construe the factual allegations in the Cozbys’ favor. Brown, 80
S.W.3d at 555; Woods, 21 S.W.3d at 658. Accordingly, we hold that their allegations regarding
the fence could support a finding that the O’Reilly constructed the fence for a public purpose.
      The fact that O’Reilly later removed the fence poses another potential hurdle to the Cozbys’
ability to recover on an inverse condemnation theory for the fence. However, the Cozbys can
recover for a “temporary taking” if they can show that it was “a temporary limited restriction of
access brought about by an illegal activity or one that [wa]s negligently performed or unduly
delayed.” Avenue Corp., 704 S.W.2d at 13; accord Allen, 870 S.W.2d at 1 n.1; Whataburger,
60 S.W.3d at 261; R. B. Underwood, 23 S.W.3d at 470.
      The Cozbys’ allegation that the City should be held liable for pouring soil at the pavement
edge is not actionable as a taking because it was done for the benefit of the Cozbys rather than for
a public purpose. See Little-Tex Insulation Co., 39 S.W.3d at 598; Maguire Oil Co., 69 S.W.3d
at 358; Gragg, 43 S.W.3d at 614-15. Their allegation that the City should be held liable for
failing to require O’Reilly to erect a fence on its property line is not an actionable taking because
it does not allege a “direct” restriction on the use of their property. See Westgate, 843 S.W.2d
at 452-53; Wilkinson, 54 S.W.3d at 18. Rather, they contend that, because no fence separates the
properties, they have experienced a diminution in the value of their property and have suffered
mental anguish because of the conduct of O’Reilly patrons.
      For these reasons, we conclude that the trial court erred by sustaining the City’s plea to the
jurisdiction as to the Cozbys’ inverse condemnation claim.
Nuisance
      A “non-negligent” nuisance claim falls within the waiver of immunity provided by article I,
section 17. See City of Abilene v. Downs, 367 S.W.2d 153, 159 (Tex. 1963); Montgomery County
v. Fuqua, 22 S.W.3d 662, 667-68 (Tex. App.—Beaumont 2000, pet. denied); City of Saginaw v.
Carter, 996 S.W.2d 1, 3 & n.3 (Tex. App.—Fort Worth 1999, pet. dism’d w.o.j.); Bible Baptist
Church v. City of Cleburne, 848 S.W.2d 826, 830 (Tex. App.—Waco 1993, writ denied). 
“‘[N]on-negligence’ means beyond negligence, as in gross negligence or an intentional act.” 
Tarrant County v. English, 989 S.W.2d 368, 374 (Tex. App.—Fort Worth 1998, pet. denied)
(citing Sipes v. Tex. Dep’t of Transp., 949 S.W.2d 516, 522 (Tex. App.—Texarkana 1997, writ
denied)); accord Fuqua, 22 S.W.3d at 668. An actionable nuisance in this regard is a condition
or thing which “in some way constitute[s] an unlawful invasion of the property or rights of others
that is inherent in the thing or condition itself, beyond that arising from its negligent or improper
use.” Carter, 996 S.W.2d at 3 n.3; accord Fuqua, 22 S.W.3d at 668; Bible Baptist Church, 848
S.W.2d at 829-30.
      Three of the Cozbys’ factual allegations could be actionable under a nuisance theory: (1) the
limitation of access to their property because of the difference in elevation between the alley and
their property; (2) the City’s entry on their property to ameliorate the drop-off by placing soil at
the edge of the paved alley, which left a mudhole on their property; and (3) the temporary
restriction of access to their property by the fence built along their property line.
      The City responds that the Cozbys’ original complaints regarding the location of the fence and
the elevation difference have been corrected. The record reflects and the Cozbys allege in their
petition that O’Reilly took the first fence down. However, the City misreads Warren’s deposition
testimony to conclude that his “drop-off complaint” has been satisfactorily resolved.
      The Cozbys’ petition makes two primary allegations regarding the drop-off at the edge of the
concrete pavement: (1) that the remainder of the alley was impassable because of the drop-off; and
(2) that access to their property was restricted because of the drop-off. Warren testified that the
City “did a marvelous job of restoring the alley to an all-weather condition.” (emphasis added). 
He also testified that the City had corrected the “alley problem” by paving the remainder of the
alley with gravel. Nevertheless, Warren testified that he remains dissatisfied with the alley
because he wants the City to pave the remaining ten or twelve feet of the alley adjacent to his
garage with concrete.
      Regarding the drop-off at the garage entrance, Warren testified that he still cannot use the
garage, notwithstanding gravel added by the City to provide a transition. He testified that the
gravel provides “an irregular drop. Parts drop fast, parts slow—slope.” He believes that this
“irregular drop” poses a risk of damage to any vehicle he attempts to park in the garage. This
perceived restriction on the Cozbys’ access to the garage appears to be inherent in the nature of
the elevation difference which exists between the alley and the garage.
      The fence caused a temporary restriction of access to the Cozbys’ property. From the record,
it appears that the “mudhole” the City created when it tried to ameliorate the drop-off was likewise
a temporary condition. Nevertheless, even a temporary nuisance can give rise to compensable
damages. Bayouth v. Lion Oil Co., 671 S.W.2d 867, 868 (Tex. 1984); Loyd v. ECO Resources,
Inc., 956 S.W.2d 110, 126 (Tex. App.—Houston [14th Dist.] 1997, no pet.).
      However, the Cozbys cannot prevail on a nuisance theory for their allegation regarding the
City’s failure to require O’Reilly to erect a fence. The “injuries” they claim to have sustained as
a result of O’Reilly’s failure to erect a fence are not “inherent” in the absence of a fence. See
Wickham v. San Jacinto River Auth., 979 S.W.2d 876, 880 (Tex. App.—Beaumont 1998, pet.
denied); Loyd, 956 S.W.2d at 133; Hoechst Celanese Corp. v. Compton, 899 S.W.2d 215, 223
(Tex. App.—Houston [14th Dist.] 1994, no writ). Rather, their petition and deposition testimony
establish that their injuries resulted from the conduct of O’Reilly patrons. Therefore, they cannot
prevail on a nuisance claim against the City due to the City’s failure to require O’Reilly to erect
a fence.
      For these reasons, we conclude that the trial court erred by sustaining the City’s plea to the
jurisdiction as to the Cozbys’ nuisance claim.
      We affirm the court’s order sustaining the City’s plea to the jurisdiction on the Cozbys’ claims
under the Tort Claims Act. We reverse the order as to the Cozbys’ inverse condemnation and
nuisance claims and remand that portion of this cause to the trial court for further proceedings
consistent with this opinion.

                                                                   REX D. DAVIS
                                                                   Chief Justice
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed in part, Reversed and remanded in part
Opinion delivered and filed December 4, 2002
Publish
[CV06]