**Joseph Claghorn SAFFOLD, Plaintiff,**

v.

**Cecil F. CARTER, et al., Defendants.**

**No. CV 489–341.**

United States District Court,
S.D. Georgia,
Savannah Division.

May 16, 1990.

Dwight T. Feemster, Savannah, Ga., for plaintiff.

Edward T. Brennan, Albert E. Clark, Dana F. Braun, M. Tyus Butler, Jr., Savannah, Ga., for defendants.

ORDER

EDENFIELD, Chief Judge.

Before the Court is defendants' motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). For the reasons set forth below, the Court GRANTS the motion.

## BACKGROUND

Plaintiff Joseph Claghorn Saffold alleges that he is a resident of South Carolina and the owner of property on Whitemarsh Island in Chatham County, Georgia known as "Saffold Field." Defendants are the Chatham County Board of Education (the "Board") and the Chatham County Commissioners (the "Commissioners"). In his complaint, Saffold claims that the defendants are planning to condemn Saffold Field through the Board's powers of eminent domain, and that they have publicized their interest in the property in an attempt to depress its value. Further, the complaint charges that when the expected condemnation does take place, the Board plans to donate some of the condemned property to the Commissioners for noneducational use, making the condemnation outside of the Board's powers. The complaint also charges that the defendants have neither a need for the property nor the funds necessary to pay for it, and that they have failed to institute negotiations to purchase the property without resorting to condemnation.

Saffold alleges that these actions have prevented him from selling the property at fair market value or from securing investors or financing to develop the property. He further alleges that the actions threaten future irreparable harm. He brings claims under the Fifth and Fourteenth Amendments to the United States Constitution, as well as state law claims for inverse condemnation, warehousing, and intentional infliction of emotional distress, and he seeks both damages and equitable relief. Defendants have moved to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted.

## MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of an action for failure to state a claim upon which relief can be granted. However, the Court should not grant such a motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## ANALYSIS

Saffold has made no allegation that any defendant has instituted condemnation proceedings against his property. Rather, he claims damage from the actions which defendants have taken in preparation for a future condemnation. Having carefully reviewed the controlling precedent, the Court concludes that the facts as alleged fail to set forth a cognizable claim.[1]

### I. STATE CLAIMS

#### 1. *Inverse Condemnation*

■ As Saffold correctly notes, Georgia law recognizes an action for inverse condemnation where private property has been taken for public use, but where no formal condemnation proceedings have been instituted. *See Baranan v. Fulton County*, 232 Ga. 852, 209 S.E.2d 188 (1974); *Clifton v. Berry*, 244 Ga. 78, 259 S.E.2d 35 (1979). Further, "no physical invasion damaging the property need be shown; only an unlawful interference with the right of the owner to enjoy his possession." *Duffield v. DeKalb County*, 242 Ga. 432, 434, 249 S.E.2d 235 (1978). Georgia courts have sustained inverse condemnation actions where private property was damaged by noise, odors, smoke, and vibrations created by public works. *See MARTA v. Trussell*, 247 Ga. 148, 151, 273 S.E.2d 859 (1981) (citing cases).

■ Damage due to publicity of upcoming condemnation proceedings, however, is not compensable under Georgia law. It has long been established that, in a direct condemnation proceeding, the value of the property must be measured at the time of

---

**1.** Since the Court has determined that the complaint fails to set forth a cognizable claim, it need not consider defendants' various claims of immunity from suit.

the taking. *Housing Authority of City of Decatur v. Schroeder,* 222 Ga. 417, 151 S.E.2d 226 (1966). "That the value of the property on [the date of taking] may have been lessened as a result of the anticipated condemnation is totally irrelevant to the issue of just and adequate compensation." *Department of Transp. v. Petkas,* 189 Ga. App. 633, 639, 377 S.E.2d 166 (1988); *see also Schroeder,* 222 Ga. at 417, 151 S.E.2d 226 (rental income lost prior to date of taking, as a direct result of impending condemnation proceedings, not compensable); *Collins v. MARTA,* 163 Ga.App. 168, 291 S.E.2d 742 (1982) (same).

More recently, the Georgia Supreme Court has held that damages resulting from an expected condemnation are not compensable in inverse condemnation proceedings. In *Josh Cabaret, Inc. v. Dept. of Transportation,* 256 Ga. 749, 353 S.E.2d 346 (1987), the defendant state agency informed the plaintiff that the building in which it was operating was to be condemned in three months. Two months later, the plaintiff relocated. The condemnation never took place, but the plaintiff instituted inverse condemnation proceedings in an effort to recover the costs of relocation and the value of the lease it had been forced to replace. Holding that losses due to an impending exercise of eminent domain are not compensable in either direct condemnation or inverse condemnation proceedings, the court upheld the trial court's grant of summary judgment to the defendant.

■ In the case at bar, Saffold contends that the defendant's precondemnation activities have caused him to be deprived of the full value of his property. Under *Josh Cabaret,* it is clear that such allegations fail to state a claim for inverse condemnation, and the plaintiff is therefore entitled to neither legal nor equitable relief on that claim.

## 2. Future Harm

■ Next, Saffold contends that defendants' intentions in planning to condemn his property without public need and without the funds to pay for the property present a threat of irreparable harm to him in the future. He also claims that the Board is preparing to act beyond the scope of its eminent domain authority, in that it intends to donate part of Saffold Field to the Commissioners for non-educational use. Saffold seeks an injunction preventing defendants "from further attempts to plan to condemn the Plaintiff's property or to condemn the Plaintiff's property until they can demonstrate to the Court the public need for the projects anticipated on that sight [sic]." Complaint, par. 25.[2]

This claim is not cognizable under Georgia law. In order to exercise its powers of eminent domain, the Board must follow a statutorily defined procedure. O.C.G.A. § 20-2-522; O.C.G.A. § 22-2-130 *et seq.* This procedure allows any person with an interest in condemned property to intervene in the condemnation proceedings and to present any claim or challenge to the propriety of the proceedings. O.C.G.A. § 22-2-130 *et seq.* The court has the power, based upon such a challenge, to enjoin the condemnor from proceeding until the issues raised by the challenge have been determined. Thus, the Georgia Supreme Court has held that a separate equitable petition to enjoin a condemnation governed by the statute will not lie:

---

**2.** In addition to the state law claims outlined above, Saffold brings claims for warehousing, conspiracy, and intentional infliction of emotional distress. These claims cannot stand. First, Saffold has cited no authority suggesting that a cause of action for "warehousing" exists under Georgia law. As for the claim of conspiracy, "[w]here damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy." *McElroy v. Wilson,*

143 Ga.App. 893, 895, 240 S.E.2d 155 (1977). Finally, Saffold has failed to state a claim for intentional infliction of emotional distress. A defendant may be held liable for tortious conduct if the conduct is "of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." *Moses v. Prudential Ins. Co. of America,* 187 Ga.App. 222, 225, 369 S.E.2d 541 (1988). The defendants' alleged conduct does not rise to this level.

[there is] adequate provision for anyone claiming an interest in the subject property to assert equitable as well as legal rights to the property in the condemnation proceeding itself ... and there is no need, when condemnation proceeds under this chapter, for one claiming an interest in the property to institute a separate suit to assert equitable rights ... The condemnee has a complete and adequate remedy in the condemnation proceeding.

*Mitchell v. State Highway Dept.*, 216 Ga. 517, 518, 118 S.E.2d 88 (1961); *see also DeKalb County v. Jackson–Atlantic Company*, 123 Ga.App. 695, 182 S.E.2d 160 (1971). Under the rule of *Mitchell*, Saffold has failed to allege facts upon which this Court could grant the injunction he seeks.

## II. SECTION 1983 CLAIM [3]

▇ Finally, Saffold contends that the defendants have, under color of state law, deprived him of his Fifth Amendment right to be justly compensated for property taken for public use, in violation of 42 U.S.C. § 1983.[4] The federal courts have consistently rejected Fifth Amendment claims such as that alleged here. In *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 15, 104 S.Ct. 2187, 2196, 81 L.Ed.2d 1 (1984), for example, the Supreme Court held that the petitioner was not entitled to an award for precondemnation damage to his property value, where he was free to make whatever use he pleased of the property pending the institution of condemnation proceedings.

> At least in the absence of an interference with an owner's legal right to dispose of his land, even a substantial reduction of the attractiveness of the property to potential purchasers does not entitle the owner to compensation under the Fifth Amendment.

*Id.* A similar claim was rejected in *Chacon v. Granata*, 515 F.2d 922 (5th Cir.1975), *cert. denied* 423 U.S. 930, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975). In that case, a group of landowners challenged the annexation of their property, a procedural action taken prior to formal condemnation. They alleged that the annexation was the first step in a scheme either to enact unlawful zoning ordinances or to drive down their property values. The Fifth Circuit rejected the claim and upheld the district court's dismissal of the complaint:

> That the annexation itself inflicts no legal injury on these plaintiffs is clear, though it allegedly has caused a decline in the value of their property. Many kinds of legislative and administrative action affect property values, but, without some diminution in the owner's right to use, do not constitute a taking within the purview of the Fourteenth Amendment. (cites)

*Id.* The court also noted that:

> At some point, plaintiffs may be able to show that the annexation was the first step toward a denial of their constitutional right to just compensation. Whatever wrong the annexation might inflict, however, would be merged into the ultimate acts ... the annexation by itself is nothing more than an inchoate wrong that may never ripen.

*Id.; see also Agins v. Tiburon*, 447 U.S. 255, 263, n. 9, 100 S.Ct. 2138, 2143, n. 9, 65 L.Ed.2d 106 (1980) ("Mere fluctuations in value during the process of governmental decision making, absent extraordinary de-

---

**3.** Had Saffold been entitled to a remedy under state law, the Court would have dismissed his Section 1983 claim as premature. It is well established that a Fifth Amendment claim for just compensation is not ripe until the plaintiff has sought compensation through available state law channels. *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 196–7, 105 S.Ct. 3108, 3121–22, 87 L.Ed.2d 126 (1985).

**4.** The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const.Amend. V.

42 U.S.C. § 1983 provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

lay, are "incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense," *citing Danforth v. United States*, 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939)). Under this line of cases, Saffold's complaint clearly fails to state a claim for violation of his Fifth Amendment rights.

### CONCLUSION

It "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" on either his state law or his federal constitutional claims. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02. The Court therefore GRANTS defendants' motion to dismiss the complaint.[5]

SO ORDERED.

---

**5.** Plaintiff has moved for hearing on his application; the motion is DENIED.