Joe R. WILKINSON, et al., Appellants,

v.

DALLAS/FORT WORTH INTERNA-
TIONAL AIRPORT BOARD, The City
of Dallas, and The City of Fort Worth,
Appellees.

No. 05–99–01028–CV.

Court of Appeals of Texas,
Dallas.

Jan. 17, 2001.

4

**5**

Walter W. Leonard, Fort Worth, for appellants.

Joseph G. Werner, Haynes & Boone, Marcos G. Ronquillo, Ronquillo Law Firm, Dallas, for appellees.

Before MORRIS, WRIGHT, and MARTIN RICHTER,[1] JJ.

## OPINION

MORRIS, Justice.

Hundreds of current and former homeowners in Irving, Texas sued Dallas/Fort Worth International Airport Board, the City of Dallas, and the City of Fort Worth for damages.[2] Generally, they alleged their homes were "taken" and "damaged" by governmental actions in connection with a runway expansion project at Dallas/Fort Worth International Airport in violation of the Texas and United States Constitutions. The trial court granted summary judgment in favor of D/FW on all of the homeowners' claims. The homeowners appealed asserting the trial court

---

1. The Honorable John Ovard, Retired, Court of Appeals, Fifth District of Texas at Dallas was a member of the original panel and participated in the submission of the case. Due to his retirement from the Court on July 31, 2000, J. Ovard did not participate in the issuance of this opinion. The Honorable Martin Richter succeeds J. Ovard and has reviewed the record and the briefs in this case.

2. We will refer to the three appellees collectively as "D/FW."

erred in granting summary judgment against them. For the reasons that follow, we affirm the trial court's judgment.

## I.

The appeal before us involves four separate lawsuits that were consolidated by the trial court on the parties' joint motion. Appellants in the *Wilkinson* lawsuit are or were homeowners in the Broadmoor Hills subdivision.[3] Appellants in the *Baker* lawsuit were homeowners in the Harrington Heights subdivision.[4] Some of the Harrington Heights homeowners voluntarily sold their property to the cities of Dallas and Fort Worth. The cities initiated eminent domain proceedings against the other Harrington Heights homeowners. Appellants in the *Barkis* lawsuit[5] as well as

3. *Wilkinson, et al. v. Dallas/Fort Worth International Airport Board, et al.*, Cause No. 94–9369–H. The appellants in this lawsuit include Joe R. Wilkinson, Mary Doreen Wilkinson, Wayne Musgrave, Jackie L. Musgrave, Wajidali S. Alladina, Laila W. Alladina, Kenneth F. Book, Debbie J. Book, Michael L. Bright, Gail L. Bright, Thomas V. Carroll, Parrie Jane Carroll, Gerard Catu, Rickey J. Chenault, Pam Chenault, Marzanne Claiborne, Rick D. Conley, Susan M. Conley, Esther Elizabeth Day, Ric Ellis, Mohammad Forghani, Stephan R. Fulce, Betty Jane Fulce, Dennis M. Goodrich, Walter L. Gregg, Rex W. Henegar, Abbie G. Henegar, William H. Hill, Carole A. Hill, Kathleen Eichelberger Hodnett, Kenneth R. Jordan, Carolyn S. Jordan, James T. Kahl, Homa B. Kahl, Bong Sun Kim, Philip Song, Janet Kinney, John Edward Kleman, Raylin A. Denise, Dorothy T. Ledbetter, D.Y. Lemaire, Gail D. Koch Lemaire, D.H. Lewter, Margie R. Lewter, Robert A. Lloyd, Gary W. McClelland, Mary A. McClelland, Ricky G. McCraney, Valerie J. Tarricone McCraney, Daniel C. Meyer, Carole B. Meyer, Charlsie Montgomery, Max M. Morgan, Kathryn Morgan, Jim Nation, Judy Nation, Walter M. Nolley, Debra Nolley, Virginia M. Parrish, Calbert Monte Perkins, Lynda J. Perkins, Tom L. Pressly, Jancheryl Nicholas Pressly, D. Charles Ratcliff, Steven J. Reynolds, Margaret J. Reynolds, Timothy Reynolds, Jesse Byron Rogers, Jr., Roberta Fallon Rogers, Clyde Roy, Simon Schilder, Theresia A. Schilder, Mark J. Seavert, Laura Ann Seavert, Milton W. Sick, Jr., Karen R. Sick, James W. Snider, Jr., Donna K. Snider, Manford J. Steele, Barbara A. Steele, Dung Ngoc Sun, Bang Ngoc Trinh, Dung Thi Bui, Garry Waldrum, Kimberly Waldrum, William E. Warner, Deborah T. Warner, Sharon A. Weston, Jean A. Rose, James M. Wheeler, Linda J. Wheeler, Cary Wilburn, Linda Wilburn, Lawrence W. Winkler, Kathryn Ann Winkler, Reginald D. Wray, Linda S. Wray, Bo Chu Yu, Shing Yin Yu, Max I. Larsen, Alvis Arthur, Sheila Arthur, Deborah Bacon, Donald Eicholz, Marilyn T. Eichholz, Abdulrahim Panchbhaya, Mahrunnisha Panchbhaya, Richard G. Durbin, and Linda Brand.

4. *Baker, et al. v. Dallas/Fort Worth International Airport Board, et al*, Cause No. 94–9897–I. The appellants in this lawsuit include William D. Baker, Mary Baker, Bill Reid, Linda Reid, Frank J. Stangel, B.W. Bartlett, Paula Bartlett, Elmo M. Blount, Darlene S. Blount, John Flood, Martha Flood, Casey Foster, Kay Foster, Charlene Gilbert, Robert H. Haymes, Peggy M. Haymes, Donald L. Johnson, Virginia L. Johnson, Rex Lawson, Tammy Lawson, Jim Simpson, Homer Tompkins and Betty Tompkins, Patrick Moriarty, Susan Moriarty, Kingston Yong and Joy Yong.

5. *Barkis, et. al. v. Dallas/Fort Worth International Airport Board, et al.*, Cause No. 96–1808–D. The appellants in this lawsuit include Pete Kenny Barkis, Debbie Barkis, Dorothy Allred, Robert Bateman, Jo Ann Bateman, Donald L. Brown, Elanora Brown, F. Larre Bryant, Charles David Coffey, Donna E. Coffey, Arnold D. Conley, Mary A. Conley, Bruce Monroe Crone, Jack Dehart, Doris Dehart, Donald B. Doherty, Lewis R. Feinberg, Dana M. Franklin, Benjamin Joseph Griffin, Connie L Griffin, William J. Harris, Sarah Lynn Harris, German Pittman Haymore, III, Linda Susan Haymore, Derrell D. High, Violet Northcutt High, John Hill, Lynn Hill, Douglas Kinser, Mozelle Kinser, Wayne Kirk, John Mammen, Theresa Mammen, Russell H. Orms, Barbara J. Orms, Roberta Oxford, Elvin B. Parchman, Mary Lou Parchman, Chan Park, Jung Park, Mary F. Phelps, Paul C. Staudt, Nelson D. Stewart, Lynn A. Stewart, William J. Sullivan, Margaret A. Sullivan, Millard F. Turner, M. David Wier, Nancy L. Wier, Allen Williams, Felicia Williams, Luther

those in the *Vece* lawsuit[6] are or were homeowners in northwest Irving.

## II.

Appellants' complaints are varied, but generally arise out of three categories of activities related to the airport runway expansion: (1) D/FW's pre-condemnation actions and policies, (2) demolition of condemned properties and runway construction activities, and (3) overflights from the use of the completed runway. Underlying appellants' complaints are D/FW's initial announcement to expand the runway without the consent of adjacent home rule cities,[7] its extended court battle with the cities that followed, and its later successful efforts in obtaining a legislative amendment to proceed with the planned expansion.[8] Appellants assert that, through these actions, D/FW effectively took control over the subject area by creating a five-year period during which the homeowners had great difficulty selling or obtaining financing for their homes. Appellants also complain about D/FW's policies and decisions with respect to which homes would be condemned and the manner in which the demolition and construction proceeded. They assert D/FW made representations and promises it refused to keep with respect to which, and on what terms, homes would be condemned or included in what they described as the Runway Expansion Mitigation Program. Appellants also allege that during the period D/FW was seeking approval of the runway expansion project from the City of Irving or, alternatively, approval of the legislative amendment of the Texas Municipal Airport Act, D/FW pursued a sample mitigation program that resulted in a few homeowners being bought out at prices and

G. Wright, Juan B. Zurita, Marilyn A. Zurita, Thomas R. Hager, Wanda D. Hager, H. Davis Tubre, Jr., and Janis L. Tubre.

6. *Vece, et al. v. Dallas/Fort Worth International Airport Board, et al.,* Cause No. 96–1813–G. The appellants in this lawsuit include John A. Vece, Diana M. Vece, Michael D. Baird, Connie Baird, Wallace G. Banks, II, Evelyn J. Banks, Bruce G. Bartlett, S. Anne Bartlett, Frank A. Bell, Mary A. Bell, Jack G. Benton, Debra K. Benton, George Chapman, Sharon L. Chapman, Philip Cornacchia, Jere W. Daykin, V. Sue Daykin, Presley W. Donaldson., Bobbie R. Donaldson, J. Brent Edwards, Sherrilynn B. Edwards, Jack Etchison, Barbara N. Etchison, Raul Garcia, Jr., Maria Louisa Garcia, James W. Green, Cheryle Dage Green, Carl W. Heady, Judy D. Heady, Kenneth P. Hill, Dorothy E. Hill, Earlene H. Hillard, Jerry A. Hitt, Susan B. Hitt, Ronald L. Hula, Judith Hula, John P. Hyde, Julia A. Hyde, Wesley Elden Jackson, Oscar Long, Anna Long, Cynthia D. Lutz, Gerald S. McCorkle, Carol F. McCorkle, John Medaille, Christine Medaille, Charlie E. Moreno, Karen A. Moreno, Robert Lynn Mullin, Linda Jean Mullin, Gary Patton, Donna Patton, Roy C. Reynolds, Judy C. Reynolds, Chris. C. Sanguinetti, Sheryl Sanguinetti, Larry Seeding, Linda Seedig, Arthur D. Sinclair, Sherry J. Sinclair, Henri D. Tatro, Jr., Mary L Tatro, Stephen Twenge, Jo Ann Twenge, Debra Warden, and Timothy Dale Warden.

7. "Home rule cities" are self-governing and look to the legislature not for grants of power but only for restrictions on their powers. *MJR's Fare of Dallas, Inc. v. City of Dallas,* 792 S.W.2d 569, 573 (Tex.App.—Dallas 1990, writ denied).

8. The airport board sued the cities of Irving, Euless, and Grapevine claiming that it was not required to follow local zoning ordinances in connection with their runway expansion plans and had the right to condemn the cities' streets and roads under the municipal airports act. *See Dallas/Fort Worth Int'l Airport Bd. v. City of Irving,* 854 S.W.2d 161 (Tex. App.—Dallas 1993). This Court affirmed the trial court's summary judgment against the airport board. *Id.* After our opinion issued, however, the legislature amended the relevant portions of the municipal airports act. *See Dallas/Fort Worth Int'l Airport Bd., v. City of Irving,* 868 S.W.2d 750 (Tex.1993). The supreme court vacated our judgment and remanded the cause to the trial court for consideration of the legislative amendment. *Id.*

relocation benefits that were much higher than those later offered to other property owners in the area. They contend D/FW acted in bad faith and with deliberate indifference to appellants' rights throughout the expansion. Lastly, they complain about the detrimental effects the use of the new runway has had on their property and persons.

According to their pleadings, all appellants seek damages for injuries caused by D/FW's alleged representations that there would be no compensation for property improvements after the announcement of the runway expansion project, its alleged bad faith premature announcement and delay associated with the runway expansion project, its "bad faith disregard of promises, appellants' rights under the law and applicable regulations," and its "indifference to appellants' rights of due process and fair dealing." The *Wilkinson, Vece,* and *Barkis* appellants specifically seek damages for D/FW's refusal to include their homes in the Runway Expansion Mitigation Program. These appellants also seek damages because of the use of the new runway, complaining flights over and adjacent to their homes cause noise, pollution, crash hazards, and disruption of their daily activities causing "economic, physical, and mental distress on these [appellants] and their properties." The *Wilkinson* and *Baker* appellants seek additional damages for the piecemeal destruction of their neighborhoods as well as adjacent neighborhoods, the "protracted bombardment and invasion of their homes and persons by noise, dust, traffic (of heavy trucks and

construction equipment), vibration, and dislocation of vermin caused by the demolition of condemned homes," and injuries to their neighborhood park caused by the relocation of Valley View Lane. The *Wilkinson* appellants also seek compensation for injuries caused by the relocation of Valley View Lane, asserting the relocation created access difficulties and congestion to Carbon Road, the principal road into their subdivision. Finally, the *Barkis* appellants seek damages for D/FW's alleged failure to offer some appellants the same compensation offered to those in the sample mitigation program.

In the trial court below, three homeowner couples whose claims the parties considered to be representative of all other appellants were selected as test cases.[9] Discovery on the test cases proceeded while the remaining homeowners' claims were abated. D/FW later moved for summary judgment on each of the test cases, generally asserting: (1) appellants failed to allege a cause of action under either state or federal law; (2) appellants' state constitutional claims were precluded by the community damage principle; (3) appellants had no evidence of any injury that would be compensable as a taking under the state or federal constitution; (4) appellants' federal claims were not ripe for adjudication; and (5) appellants who voluntarily sold their properties to the cities, or whose properties were the subject of an eminent domain proceeding, had waived or were estopped from pursuing their claims.[10]

9. Joe and Doreen Wilkinson were chosen as representatives for all plaintiffs in *Wilkinson,* Bill and Linda Reid represented the plaintiffs in *Baker,* and Juan and Marilyn Zurita were selected as representatives for the plaintiffs in *Barkis* and *Vece.*

10. For convenience and clarity we have categorized D/FW's summary judgment grounds

as indicated. For each test case, however, D/FW's motion for summary judgment presented a multitude of grounds for relief. By way of example, D/FW's motion for summary judgment in the Wilkinsons' lawsuit presented the following thirty grounds:

1. The Defendants are entitled to summary judgment as to all claims asserted in Count

One because every injury alleged by the Wilkinsons is non-compensable community damage.

2. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged "piecemeal demolition of homes in Harrington Heights, instead of a subsequent, simultaneous removal or destruction of those homes" because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for delays in the commencement or completion of a public works project.

3. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged "piecemeal demolition of homes in Harrington Heights, instead of a subsequent simultaneous removal or destruction of those homes" because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way, not common to the entire area, as a proximate result of the alleged "piecemeal demolition of homes in Harrington Heights instead of a subsequent, simultaneous removal or destruction of those homes."

4. The Defendants are entitled to summary judgment as the Wilkinsons' claims based on the alleged "bombardment and invasion of the Plaintiffs' homes by noise, dust, traffic, (of heavy trucks and construction equipment), vibration and dislocation of vermin caused by the demolition of homes in Harrington Heights" because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for inconvenience and annoyance attendant to the construction of a public works project.

5. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged "bombardment and invasion of the Plaintiffs' homes by noise, dust, traffic (of heavy trucks and construction equipment), vibration and dislocation of vermin caused by the demolition of homes in Harrington Heights" because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way, not common to the entire area, as a proximate result of the noise, inconvenience, and annoyance allegedly generated by the demolition of nearby homes or by construction activity.

6. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged "relocation of Valley View Lane and the resulting diminished access to Carbon Road" because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for diminished street access as the result of governmental activities, in the absence of pleading and proof that access to the Plaintiffs' property has been materially and substantially impaired.

7. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged "relocation of Valley View Lane and the resulting diminished access to Carbon Road" because, after adequate time for discovery, there is no evidence that access to the Wilkinsons' property was materially and substantially impaired by the relocation of Valley View Lane or that their house was damaged in some unique way, not common to the entire area, as a proximate result of the relocation of Valley View Lane and the resulting diminished access to Carbon Road.

8. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged "exposure of the neighborhood park to traffic, traffic fumes, noise and the attendant loss of quiet, seclusion and security to the users of the park" because Article 1, Section 17 of the Texas Constitution does not provided the Wilkinsons a cause of action for damage to property not owned by them.

9. The Defendants are entitled to summary judgment as the Wilkinsons' claims based on the alleged "exposure of the neighborhood park to traffic, traffic fumes, noise and the attendant loss of quiet, seclusion and security to the users of the park" because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way, not common to the entire area, as a proximate result of "exposure of the neighborhood park to traffic, traffic fumes, noise and the attendant loss of quiet, seclusion and security to the users of the park."

10. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged refusal to include the Plaintiffs neighborhood in the "Runway Expansion Mitigation Program" because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for a governmental agency's refusal to extend benefits to a particular group of individuals.

11. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the alleged "refusal to include the

Plaintiffs'' neighborhood in the ''Runway Expansion Mitigation Program'' because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way, not common to the entire area, as a proximate result of the Defendants' refusal to include the Wilkinsons' neighborhood in the Runway Expansion Mitigation Program.

12. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''representations to the Plaintiffs that the Plaintiffs would not be compensated for improvements or significant repairs made after the announcement of the Runway Expansion Project'' because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for a governmental entity's misrepresentations.

13. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''representations to the Plaintiffs that the Plaintiffs would not be compensated for improvements or significant repairs made after the announcement of the Runway Expansion Project'' because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way not common to the entire area, as a proximate result of the Defendants' alleged representations to the Wilkinsons that the Wilkinsons would not be compensated for improvements or significant repairs made after the announcement of the Runway Expansion Project.

14. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''bad faith and premature announcement of the Runway Expansion Project without authority to carry out that expansion and the resultant delays'' because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for economic harm caused by the announcement of a public works project or for delays in the commencement or completion of public works projects.

15. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''bad faith and premature announcement of the Runway expansion project without authority to carry out that expansion and resultant delays because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way not common to the entire area, as a

proximate result of the announcement of the project or as a proximate result of delays in the commencement or completion of the project.''

16. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''bad faith disregard of promises made'' because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for a governmental entity's breach of promise.

17. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''bad faith disregard of promises made'' because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way, not common to the entire area, as a proximate result of the Defendants' alleged bad faith disregard of promises made to the Wilkinsons.

18. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''disregard of rights under the law and applicable regulations'' because Article 1, Section 17 of the Texas Constitution ''does not provide a cause of action for a governmental entity's disregard of rights under the law and applicable regulations.''

19. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''disregard of rights under the law and applicable regulations'' because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way, not common to the entire area, as a proximate result of the Defendants' alleged disregard of the Wilkinsons' rights.

20. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''indifference to rights of due process and fair dealing'' because Article 1, Section 17 of the Texas Constitution does not provide a cause of action for a governmental entity's ''indifference to rights of due process and fair dealing.''

21. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on the Defendants' alleged ''indifference to rights of due process and fair dealing'' because, after adequate time for discovery, there is no evidence that the Wilkinsons' house was damaged in some unique way, not common to the entire area, as a proximate result of the Defen-

The trial court granted D/FW summary judgment on the test cases without specifying the grounds relied on for its ruling. D/FW later moved for and was granted summary judgment against the remaining homeowners.[11] This appeal ensued.

Although there is a single appeal encompassing the four lawsuits, the parties have filed separate briefs for each underlying case. Because of the similarities among the pleadings and evidence involved, however, many of the issues and arguments are common to all appellants. To avoid repetition, we have structured our analysis in terms of general issues raised by the numerous summary judgment grounds, focusing first on common issues. We address issues relating to particular groups of appellants only to the extent our resolution of common issues is not dispositive.

Also, we note that many of D/FW's summary judgment grounds were based solely on appellants' pleadings. Our record indicates D/FW raised several of these summary judgment grounds in the *Baker* lawsuit by way of special exceptions. The trial court sustained these exceptions re-

dants' alleged "indifference to rights of due process and fair dealing."

22. The Defendants are entitled to summary judgment as to the Wilkinsons' claims that the Defendants took the Wilkinsons' property without just compensation, because that claim is not ripe for adjudication in the absence of pleading and proof that state law has failed to provide an adequate remedy.

23. The Defendants are entitled to summary judgment as to the Wilkinsons' claims that the Defendants took the Wilkinsons' property without just compensation, because the Defendants (sic) have not alleged that the Defendants physically invaded the Wilkinsons' property or that the Defendants have deprived the Wilkinsons of all economically beneficial uses of their property.

24. The Defendants are entitled to summary judgment as to the Wilkinsons' claims that the Defendants took the Wilkinsons' property without just compensation because, after adequate time for discovery, there is no evidence that the Defendants' alleged actions physically invaded the Wilkinson's property or deprived the Wilkinsons of all economically beneficial use of their property.

25. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on Texas Government Code Chapter 2007 because the Defendants' alleged acts were not first proposed on or after September 1, 1995.

26. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on Texas Government Code Chapter 2007 because, after adequate time for discovery, there is no evidence that the value of the Wilkinsons' property has been reduced by at least 25 percent of its market value.

27. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on physical and mental, emotional distress because, in actions brought under the Just Compensation Clause of the Fifth Amendment, damages are limited to the fair market value of the property taken.

28. The Defendants are entitled to summary judgment as to the Wilkinson' claims based on physical, mental, and emotional distress because the Defendants have sovereign immunity to these claims.

29. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on mental and physical distress because there is no cause of action for negligent infliction of emotional distress, and the Wilkinsons have failed to plead an essential element of a claim for intentional infliction of emotional distress.

30. The Defendants are entitled to summary judgment as to the Wilkinsons' claims based on physical and emotional distress because, after adequate time for discovery, there is no evidence that the Wilkinsons suffered any bodily injury as the proximate result of any act or omission of the Defendants, and no evidence that, as a proximate result of the Defendants' acts or omissions, the Wilkinsons have suffered mental anguish to such level as to render them incapable of dealing with everyday activities.

11. D/FW's motions for summary judgments with respect to the remaining appellants mirrored those of the test cases.

sulting in the amended petition now before us. D/FW also filed special exceptions in the *Wilkinson* case. But our record contains no ruling or order on these special exceptions.

■ Generally, a movant must specially except before urging a motion for summary judgment that alleges a failure to state a claim, thereby giving the plaintiff an opportunity to amend deficient pleadings. *See Salmon v. Miller,* 958 S.W.2d 424, 429 (Tex.App.—Texarkana 1997, writ denied). But if the plaintiff's pleadings establish the lack of a cause of action, or allege facts that even if proven fail to establish liability, special exceptions are not required and summary judgment may be granted on pleadings alone. *Id.* To the extent D/FW's motion for summary judgment is based on appellants' pleadings, it appears to rely upon this exception to the general rule. Appellants do not object to D/FW's summary judgment grounds directed to appellants' pleadings or argue that special exceptions were the proper vehicle for such challenges. Instead, they generally argue their allegations support causes of action under the theories pleaded. We therefore examine the merits of D/FW's summary judgment grounds assuming all allegations and facts in appellants' pleadings are true. *See Abbott v. City of Kaufman,* 717 S.W.2d 927, 929 (Tex.App.—Tyler 1986, writ dism'd).

■ When the trial court fails to specify the grounds relied on for its ruling, we may affirm the judgment on any meritorious theory advanced. *See State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993). To succeed on appeal, appellants must therefore establish that each of D/FW's grounds is insufficient to support summary judgment. *See Malooly Bros. Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

## III.

We begin our analysis with D/FW's summary judgment grounds addressing appellants' inverse condemnation claims under the Texas Constitution. D/FW sought summary judgment on these claims generally asserting: (1) all injuries alleged by appellants were noncompensable community damages; (2) appellants' pleadings failed to state a cause of action under article one, section seventeen of the Texas Constitution; and (3) there was no evidence that appellants' properties were damaged in some unique way, not common to the entire area, as a result of any of the actions or conduct attributed to D/FW.

■ Article one, section seventeen of the Texas Constitution requires adequate compensation be paid to those whose property is "taken, damaged, or destroyed for or applied to the public use." TEX. CONST. art I, § 17. To state a cause of action for inverse condemnation under this section, appellants must allege (1) an intentional governmental act, (2) resulting in the taking, damaging, or destruction of their property, (3) for public use. *See Steele v. City of Houston,* 603 S.W.2d 786, 788–91 (Tex.1980); *Barto Watson, Inc. v. City of Houston,* 998 S.W.2d 637, 640 (Tex.App.—Houston [1st Dist.]1999, pet. denied). D/FW's summary judgment grounds generally focus on the second element above, asserting appellants have failed to allege or provide evidence of a compensable taking or damaging.

■ Whether there has been a taking or damaging of property in the constitutional sense is a question of law. *See Mayhew v. Sunnyvale,* 964 S.W.2d 922, 932–33, (Tex.1998), (whether zoning ordinance constitutes compensable taking), *cert. denied,* 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996) (whether access

rights were materially and substantially impaired from highway expansion project requiring compensation under Texas Constitution); *Barto Watson, Inc.*, 998 S.W.2d 637 (whether city's act of shutting down sand pit on mistaken belief that permit was required was a taking). Nonetheless, to succeed on a claim for inverse condemnation under the takings clause of the Texas Constitution, appellants must establish either (1) an actual physical appropriation or invasion of the property, or (2) an unreasonable interference with the landowner's right to use and enjoy the property. *See Westgate Ltd. v. State*, 843 S.W.2d 448, 452 (Tex.1992); *DuPuy v. City of Waco*, 396 S.W.2d 103, 108–09 (Tex.1965). Proving merely that governmental action has caused a diminution in value or damaged the marketability of property is insufficient. *See Westgate*, 843 S.W.2d at 452 (no compensation required for economic damage to property caused by government's proposal to condemn in future); *Allen v. City of Texas City*, 775 S.W.2d 863, 865 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (no compensation for construction of levee which caused decrease in property value or increased susceptibility to flooding).

■ Because the Texas Constitution does not require compensation for every decrease in market value attributable to intentional governmental activity, the nature of the injury forming the basis of a damage claim under article one, section seventeen is critical to determining whether a compensable taking or damaging has occurred. *See Felts v. Harris County*, 915 S.W.2d 482, 484 (Tex.1996). This concept is reflected in the community damage rule. That rule permits compensation for only special injuries, not suffered by the community in general, as result of the governmental action. *Id.* Because community damages are not connected with the landowner's property rights, they are not compensable as a taking or damaging of property. *See id.* at 485. In fact, even though construction of a public work may cause injury to the public and practically destroy the value of the property in a town, a landowner would not be entitled to compensation for the diminution of his property values from these community injuries caused by such construction if the project was built with legislative permission. *See Gulf, Colo. & Santa Fe Ry. v. Fuller* 63 Tex. 467, 470–71 (1885), *quoted in Felts*, 915 S.W.2d at 484–85. The mere fact that injury is common to everyone in a particular area, however, does not bar recovery. *See State v. Schmidt*, 867 S.W.2d 769, 780 (Tex.1993). A property owner must therefore allege and prove injuries to his property different from those sustained by the community as a whole to establish a compensable injury under article one, section seventeen. *Felts*, 915 S.W.2d at 484–85.

■ Although the concept of community damage has existed for over one hundred years, the principle is not always easy to apply.[12] Similar damages experienced by all or most of the properties in a given area is the "quintessential notion of community damages." *Felts*, 915 S.W.2d at 485. In determining whether an alleged injury is special or community in nature, we focus on the nature of the alleged injuries to determine whether they are suffered by the community at large or whether they affect the landowner's property in some special or unique way. *See Schmidt*, 867 S.W.2d at 781. The Texas

---

**12.** Section 21.042 of the property code also provides that the assessment of damages in eminent domain cases may not include injuries or benefits the property owner experiences in common with the general community. Tex.Prop.Code Ann. § 21.042(d) (Vernon Supp.2001).

Supreme Court has previously concluded diminution to property values caused by diversion of traffic, inconvenience of access, impaired visibility of ground level buildings, and disruption by construction activities from the conversion of a roadway, were community damages absent allegations these injuries affected a particular parcel in some unique or different way from the surrounding area. *See id.; State v. Allen*, 870 S.W.2d 1, 1–2 (Tex.1994).

The supreme court in *Felts* reached a similar conclusion with respect to a landowner's inverse condemnation claim based solely on traffic noise from the operation of a newly constructed parkway adjacent to his property. *See Felts*, 915 S.W.2d at 484. Unpersuaded by the Feltses' attempts to characterize their noise damage as special or unique based on the noise level they experienced because of their proximity to the new roadway, the Court determined the noise damage sustained by the Feltses was no different in kind from that experienced by their neighbors or the entire community and, therefore, was not compensable. *Id.* at 485–86.

In *State v. Heal*, however, the supreme court held that diminution in value caused by impaired access to property from increased traffic and a bottleneck in connection with a highway expansion project was not community damage. *Heal*, 917 S.W.2d at 8–9. The court noted impaired access was a different kind of injury than mere circuity of travel, which the court concluded was community damage three years earlier in *Schmidt*. *Id.* at 9. Instead, impaired access may constitute special damage because access to one's land is a property right. *See Heal*, 917 S.W.2d at 9–10.

It is with these basic principles of Texas inverse condemnation law in mind that we analyze appellants' specific claims under article one, section seventeen to determine whether D/FW conclusively established

their entitlement to summary judgment based on appellants' failure to allege compensable taking or damaging. In doing so, we apply the well-known standards applicable to the review of summary judgments. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985).

## IV.

We first address appellants' inverse condemnation claims based on D/FW's alleged (1) bad faith and premature announcement of the runway expansion project, (2) refusal to include certain landowners in the mitigation program, (3) representations with respect to what repairs or improvements on homes slated for condemnation would be compensated, (4) failure to provide the same benefits offered to those in the sample mitigation program, (5) D/FW's representations that appellants would not be compensated for improvements or significant repairs made after the announcement of the project, (6) the delay in carrying out the expansion, (7) destruction and deterioration of their neighborhoods and adjacent neighborhoods, (8) bad faith disregard of promises made to appellants, (9) disregard of rights under the law and regulations, and (10) indifference to rights of due process and fair dealing. Appellants generally argue that through these actions, D/FW took legal and physical control over their properties, deeply affecting their property values.

We do not agree that these complaints implicate a direct restriction imposed by D/FW on the use of appellants' property. Although these actions may have caused a decrease in the market value of appellants' properties, and may have even changed the character of their neighborhood, absent an allegation that D/FW actually physically or legally restricted appellants' use of their properties, these claims cannot form the basis for recovery under article

one, section seventeen. *See Westgate Ltd.,* 843 S.W.2d at 452.

■ Moreover, appellants' pleadings fail to state that D/FW's alleged conduct affected their individual properties in some special or unique way different from the community as a whole or suggest a severe impairment of their ownership interest in the property. *See Felts,* 915 S.W.2d at 486 n. 5. To the contrary, appellants' pleadings clearly focus on injuries suffered by their entire neighborhood, which in turn caused damage to their property values. These injuries are not compensable under article one, section seventeen in accordance with the community damage principle as stated above.

■ Appellants also seek damages for injuries caused by the "protracted bombardment and invasion of their homes and persons by noise, dust, traffic (of heavy trucks and construction equipment), vibration, and dislocation of vermin caused by the demolition of the condemned homes," as well as "the piecemeal demolition of homes in Harrington Heights instead of a subsequent, simultaneous removal or destruction of those homes." Appellants assert that their claims based on runway-related construction and demolition sufficiently allege a physical appropriation or actual invasion of their property requiring compensation under the Texas Constitution. Although noise, dust, vibrations, insects, and vermin may have physically entered their property from condemned properties, appellants have cited no case, and we have found none, recognizing these types of temporary interferences as a physical governmental appropriation of private property entitling appellants to compensation under article one, section seventeen.

In fact, the supreme court has repeatedly indicated damages for noise, dust, increased traffic, and other inconveniences incident to the construction of a highway are not compensable under article one, section seventeen under the community damage principle. *See Felts,* 915 S.W.2d at 485; *Schmidt,* 867 S.W.2d at 775. We perceive no distinction between appellants' injury allegations relating to the effects from the demolition and construction and those the supreme court has already held to be noncompensable in the context of highway construction.

We are also unpersuaded by appellants' attempt to equate these injury allegations with stating a cause of action under article one, section seventeen based on a nuisance theory. Unlike the cases permitting compensation under that theory, appellants seek damages related to temporary construction activities and not for permanent injuries to their ownership interest or property values caused by the normal operation of a public work. *See City of Abilene v. Downs,* 367 S.W.2d 153 (Tex. 1963) (operation of sewage disposal plant); *Gainesville, H. & W. R.R. v. Hall,* 78 Tex. 169, 14 S.W. 259 (1890) (operation of railroad). We therefore conclude that appellants' damage claims based on noise, dust, traffic, vibration, and dislocation of vermin caused by construction and demolition related to the runway expansion project do not allege a compensable taking or damaging under article one, section seventeen. In reaching this conclusion, we do not suggest a plaintiff may never recover for injuries caused by such conditions, but simply conclude appellants' allegations generally complaining of these conditions have not alleged an interference with their individual property rights sufficient to overcome the community damage principle and establish a compensable injury.

■ Appellants also assert damage claims based on the relocation of Valley View Lane. The *Wilkinson* appellants in

particular complain the road relocation diminished access to Carbon Road, the primary road to their subdivision. In *Heal*, the supreme court noted that impaired access to property is not a community injury, but instead is special damage that may be compensable under article one, section seventeen if access rights have been materially and substantially impaired. *See Heal*, 917 S.W.2d at 9. As we construe appellants' complaint, however, they do not allege a material and substantial impairment of access to their property, but instead merely complain of diminished access to a community road. Appellants have provided no authority, and we have found none, holding that a landowner has a property right to a particular road to access his property. In the absence of an allegation that the diminished access to Carbon Road materially and substantially affected appellants' access rights to their property, this alleged injury cannot form the basis of a compensable taking or damaging. *See Heal*, 917 S.W.2d at 9.

■ The *Wilkinson* and *Barkis* appellants claim a park near their home was also damaged by the road relocation by "exposing it to traffic, traffic fumes, noise, and a loss of quiet and seclusion to the users of the park." Even assuming appellants may assert a claim based on a taking or damaging to the park, the nature of the injuries alleged arise from the park's increased proximity to a major road. Proximity is not the controlling issue in determining whether appellants' alleged injuries are compensable as special or unique injuries. *See Schmidt*, 867 S.W.2d at 781. Appellants' alleged injuries are shared with all other properties now fronting the relocated road and not specific to the park and, therefore, are not compensable as community damages under article one, section seventeen. *See State v. Interstate Northborough Partnership*, 8 S.W.3d 4, 13

(Tex.App.—Houston [14th Dist.]1999, pet. granted).

Relying on *City of Houston v. McFadden*, 420 S.W.2d 811, (Tex.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.), appellants also argue that the community damage principle is inapplicable to their claims because "it has been held that actions concerning airports are an obvious exception to community damages because of the specific and unique nature of activities and effects of airport operation adjacent to landowners." *McFadden* simply does not stand for such a broad proposition. Instead, *McFadden* merely confirms that a cognizable claim for damages under article one, section seventeen may be based on the taking of an air easement when frequent and low aircraft flights over a landowner's property interfere with its use and decrease its value. *Id.* at 813–14. Because appellants' damage claims addressed above involve pre-condemnation activities, demolition, and construction effects, *McFadden* does not apply to these claims.

■ The appellants in ·*Wilkinson*, *Barkis*, and *Vece*, however, contend they have alleged a damage claim based on injuries caused by aircraft overflights, which necessarily take place after the demolition and construction. As noted above, an inverse condemnation claim based on the physical intrusion of aircraft into the airspace directly over a landowner's property may constitute a compensable "taking"of an air easement under state and federal law entitling the property owner to damages. *See City of Austin v. Travis County Landfill Co., L.L.C.*, 25 S.W.3d 191, 198–99 (Tex.App.—Austin, no pet.); *McFadden*, 420 S.W.2d at 814. To constitute a compensable taking, however, the overflights must be frequent and low, causing ·a direct, immediate, and substantial interference with the property owner's use and enjoyment of the land. *See Tra-*

*vis County Landfill Co.,* 25 S.W.3d at 198. Absent evidence of an invasion by a sufficient number of airplanes so as to cause such an interference, the injury complained of is nothing more than the same injury to which every property owner in the area is subjected and is therefore not a taking, but a noncompensable community injury. *See Moore v. United States,* 185 F.Supp. 399, 400–01 (N.D.Texas, 1960).

In their pleadings, appellants seek damages from flights over and adjacent to their property causing noise above projected levels, pollution, crash hazards, and disruption of their daily activities. D/FW claims cases involving the taking of air easements do not apply here because appellants' damage claims arise merely from the general use of the new runway and are based on injuries suffered by every property owner in the area surrounding the runway. After reviewing appellants' pleadings, we agree with D/FW. Despite appellants' characterizations to the contrary, their allegations regarding overflights are not based on a physical invasion of the airspace immediately over their individual properties causing interference with their use of property, but are based on the noise, pollution, and disruption of daily activities generally caused by the use of the new runway. In arguing that the community damage principle does not apply to these claims, appellants merely assert the damage suffered by these subdivisions from these flights is different from the damage suffered by other communities in the area. We conclude these allegations are insufficient as a matter of law to constitute an interference with appellants' individual property rights such as to entitle them to compensation under article one, section seventeen based on the taking of an air easement. The mere fact that the noise and other inconveniences of which appellants complain are caused by aircraft is not enough to transform these allega-

tions into a claim for a taking of an air easement and avoid the community damage rule. Instead, the very nature of appellants' complaints suggest the elements of injuries for which they seek compensation are the type experienced by every other property owner in the community which, as noted in *Felts,* is the "quintessential notion of community damages." *Felts,* 915 S.W.2d at 485.

■ In concluding the community damage principle bars many of appellants' state constitutional claims, we necessarily reject appellants' argument that the community damage principle is tantamount to an assertion of immunity, inapplicable to a cause of action asserted under article one, section seventeen. Instead, the community damage principle determines whether the nature of the injury forming the basis of the damage claim may constitute a compensable "taking" or "damaging" in accordance with article one, section seventeen. As such, we conclude appellants' argument is meritless.

■ We are also unpersuaded by appellants' contention that the determination of whether their alleged injuries constitute noncompensable community damages is necessarily a fact issue and, therefore, inappropriate for summary disposition. Of course, a plaintiff may plead an injury that cannot be classified as community damages as a matter of law. *See, e.g., Hall,* 14 S.W. 259. Contrary to appellants assertions, however, *Hall* does not hold that whether a particular injury constitutes community damage is always a question for the trier of fact. Here, the very nature of appellants' alleged injuries indicates they do not involve an interference with a particular property right, but instead are damages shared by the community at large. In such a case, summary judgment

based on the community damage principle is appropriate.

## V.

Appellants also assert their pleadings support a claim for a bad faith taking as recognized by the supreme court in *Westgate*. We do not agree. In *Westgate*, a landowner filed a counterclaim for inverse condemnation in response to the state's eminent domain proceeding. *Westgate*, 843 S.W.2d at 450. The landowner claimed the government appropriated his property before actually acquiring it through eminent domain procedures by failing to warn of the highway expansion before the landowner built a shopping center on the property and by unreasonably delaying the acquisition of his property after announcing the proposal to condemn the property. *Westgate*, 843 S.W.2d at 451. Contrary to appellants' assertions, the *Westgate* court did not recognize a cause of action for bad faith delay. In fact, the court specifically declined to address whether a landowner may state a cause of action for inverse condemnation where the condemning authority acts in bad faith to cause economic damage to the landowner. *Id.* at 454. Instead, the court merely indicated the policy reasons supporting its decision to reject an inverse condemnation claim based on an unreasonable delay might not apply if the condemning authority delays a condemnation proceeding in bad faith to cause economic damage to the landowner. *Id.*

Appellants' complaints do not focus on delays in the actual acquisition of property by the condemning authority as alleged in *Westgate*. *See id.* Instead, their allegations focus on the depression of their property values caused by pre-condemnation activities after the initial announcement of the project. They essentially argue D/FW should never have announced the project when it did because it did not have the condemnation authority to proceed with the project at that time. They also complain of D/FW's use of certain properties as pawns in its political battle, denying some property owners mitigation and awarding others extremely beneficial compensation packages. As we construe appellants' pleadings, none of their allegations implicate the concerns raised in *Westgate* or justify a departure from the general rule requiring a current and direct restriction on the property's use to establish a compensable taking or damaging under article one, section seventeen. Accordingly, we conclude appellants' contention is without merit.

## VI.

In addition to their takings claims under the Texas Constitution, appellants in *Vece, Barkis* and *Wilkinson* asserted a statutory takings claim based on the Private Real Property Rights Preservation Act. *See* TEX.GOV'T CODE ANN. § 2007.001–.045 (Vernon Pamph.2001). Appellants assert the trial court erred by granting summary judgment on these claims because they dropped these claims before the trial court ruled on D/FW's motion for summary judgment. Apart from this conclusory assertion, appellants put forth no argument, authority, or record citations to support this contention, nor do they indicate how they were harmed by this alleged error. It is not our function to independently review the record and research the applicable law to determine whether this complaint presents reversible error. Because appellants have failed to provide us with the argument and authority necessary to make this appellate complaint viable, we consider this contention waived. *See* TEX.R.APP.P. 38.1(h).

Appellants also assert their pleadings support a claim for damages under 42

U.S.C. § 1983 based on violations of the takings clause of the Fifth Amendment to the U.S. Constitution. D/FW moved for summary judgment on appellants' federal claims contending (1) these claims were not ripe for adjudication absent pleading and proof that state law failed to provide an adequate remedy, (2) appellants failed to allege a physical invasion or deprivation of all economically beneficial use of their property, and (3) after an adequate time for discovery, there is no evidence of a physical appropriation or deprivation of all economically beneficial use of the property.

Appellants initially claim they have alleged a cognizable taking under the federal constitution in the form of a physical invasion based on the projection of dirt, dust, blast effects from construction activities and noise from the runway's use.[13] Appellants have not cited a single case that recognizes a federal taking based on such claims or provided any argument to support this conclusion. In the absence of any authority or argument with respect to how these allegations support a cause of action under the federal takings clause, we consider this contention waived on appeal. See Tex.R.App.P. 38.1(h).

▆▆▆▆ Appellants also assert federal law does not require specific physical contact or a total taking to assert a cognizable taking claim under the Fifth Amendment. Relying on Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), and other regulatory takings cases, appellants urge that a cognizable federal takings claim can be based on the unreasonable diminution of investment-backed expectations and that their pleadings suggest such a taking.

We agree with appellants' general contention that a Fifth Amendment taking may arise in the absence of a physical intrusion. A zoning ordinance may effect a taking if it deprives an owner of all economically viable uses of his land. See Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Similarly, under some circumstances, a land use regulation that severely interferes with an owner's "distinct investment backed expectations" may give rise to a taking. See Penn Central, 438 U.S. at 124, 98 S.Ct. 2646. But we are aware of no case concluding a taking occurred based solely on the diminution or fluctuations of property values in the absence of a significant interference with a landowner's property interests. To the extent appellants allege a taking based on D/FW's pre-condemnation proceedings without restricting appellants' use of their property, such claims have been routinely rejected by federal courts. See Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 15, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984); Saffold v. Carter, 739 F.Supp. 1541, 1544 (S.D.Ga.1990). Appellants' allegations fail to establish a cognizable taking under the Fifth Amendment. The trial court did not err in granting D/FW summary judgment on these claims.

▆▆▆ Appellants also argue that D/FW's failure to address specifically in their summary judgment motions appellants' claim under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution compels reversal of the trial court's judgment with respect to this cause of action. Other than a conclusory assertion that they alleged an equal protection claim based on the air-

---

13. To the extent appellants assert their overflight allegations involving the use of the new runway are also sufficient to state a taking under the Fifth Amendment, we perceive no distinction between the state and federal con-stitutional requirements for alleging a cognizable claim based on the taking of an air easement. We therefore reject this claim for the reasons previously stated.

port's failure to treat certain people on an equal basis, appellants have not included any citation of authority, discussion of the facts, or argument to support this contention. Their failure to do so has waived this alleged error on appeal. *See* Tex.R.App.P. 38.1(h). Regardless, even absent waiver, we conclude there is no merit to this contention for the following reasons.

■ The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state a claim of selective treatment, however, a plaintiff must establish (1) the person compared with others similarly situated was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See Wayte v. United States*, 470 U.S. 598, 608–09, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

■ Appellants' pleadings contain allegations complaining that D/FW, in bad faith, bought out a few homeowners in a sample mitigation program at prices and relocation benefits that were much higher than those ultimately offered to other owners in the area affected by the airport expansion. Their pleadings further allege that "... in order to secure fair and equal treatment under the law and thus, due process, the earlier offers of purchase and mitigation and the compensation levels of the sample mitigation must be extended to all affected parties equally in order to ensure equity and to negate the affect of the bad faith on the part of the Airport." Although these allegations may suggest disparate treatment, they do not allege discriminatory treatment based on an im-

permissible factor, the prevention of the exercise of a constitutional right, or a malicious or bad faith intent to injure. As such, appellants failed to state an equal protection claim for selective treatment.

■ Appellants also claim that D/FW's failure to address specifically their cause of action under 42 U.S.C. § 1983 requires reversal of the trial court's summary judgment. Section 1983 is a remedial statute designed to vindicate a federal constitutional injury. *See Albright v. Oliver*, 510 U.S. 266, 269–71, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). It does not create any substantive rights. *See Levine v. Maverick County Water Control*, 884 S.W.2d 790, 795 (Tex.App.—San Antonio 1994, writ denied). Having concluded appellants' pleadings failed to allege a viable federal constitutional injury, their section 1983 damage claims necessarily fail as a matter of law.

## VII.

In conclusion, we hold appellants' pleadings fail to state a cognizable taking or damaging claim under the Texas Constitution because the injuries they allege, as a matter of law, are not compensable as a taking or damaging under article one, section seventeen. Appellants' damage claims under section 1983 also fail because their pleadings do not establish a viable federal constitutional injury. Because the trial court's judgment can be affirmed on these grounds, we need not address appellants' arguments relating to D/FW's remaining summary judgment grounds.

We affirm the trial court's judgment.